NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CIRCUIT LIGHTING, INC.,** : | |
| : | Civil Action No. 12-5612(MLC) |
| **Plaintiff,** : | |
| : | |
| v. : | MEMORANDUM OPINION |
| : | |
| **PROGRESSIVE PRODUCTS, INC; APEX** : | |
| **STAGES, INC.; STAGEPRO, INC.; JAY** : | |
| **WALLER; and DAN HERMAN,** : | |
| : | |
| **Defendants.** : | |

      This matter comes before the Court upon Plaintiff Circuit Lighting, Inc.'s ("Plaintiff") request for leave to file a Second Amended Complaint (the "Motion") [Docket Entry No. 29] to add additional defendants, Robert Allison and Todd Allison. Defendants oppose Plaintiff's Motion [Docket Entry No. 32]. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Plaintiff's Motion. The Court considers Plaintiff's Motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion is DENIED without prejudice.

I.    **Background and Procedural History**

      On or about May 18, 2010, Plaintiff contracted with Defendant Progressive Products, Inc. ("Progressive"), Apex Stages, Inc. ("Apex") and StagePro, Inc. ("StagePro") for the purchase of a hydraulic stage and roof system (the "Stage") for a purchase price of $145,000 (the "Contract"). The terms of the Contract required payment of 10% of the purchase price with order, and full payment within ten days of delivery. Included in the Contract was a one-year warranty (the

"Warranty"). On or about June 1, 2010, Defendant Jay Waller ("Mr. Waller"), who served as the main liaison between Plaintiff and the other Defendants, physically delivered the Stage to Plaintiff's premises. Title to the Stage was not delivered at this time. Plaintiff paid $130,000 of the purchase price to Progressive in three separate checks.

Soon after delivery of the Stage, Plaintiff notified Defendants of certain defects. Defendants made repairs to the Stage; however, Plaintiff alleges that the Stage suffered from additional defects, which Defendants failed to remedy. The details of these alleged defects and repairs are outlined in the parties' submissions and are irrelevant to the motion presently before the Court; therefore, they shall not be discussed at length in this Opinion. For purposes of this Motion, it is only necessary to note that Plaintiff withheld the remaining $15,000 due on the Contract pending certain repairs and pending delivery of the title to the Stage.

On or about April 1, 2011, Plaintiff states that an individual, Defendant Dan Herman ("Mr. Herman"), entered into a one-week lease agreement with Plaintiff for certain equipment (the "Equipment"). Plaintiff states that, at all times, Mr. Herman presented himself as an employee of a company called "Sound Concepts." However, Plaintiff alleges that Mr. Herman is, in fact, an employee of StagePro and was acting at the direction of, or as an agent for, Defendants. Plaintiff further alleges that Mr. Herman delivered the Equipment to Defendants who have held the Equipment as ransom in an attempt to extract final payment for the Stage from Plaintiff. As a result, Plaintiff filed suit against Defendants on September 7, 2012 alleging, among other things, breach of contract, breach of warranty, fraud, conspiracy and conversion.[1]

Defendants filed various Answers, Cross-Claims and Counterclaims [Docket Entry Nos. 7, 13, 14 and 19]. An Initial Conference was held on January 10, 2013 and the parties exchanged

---

[1] The Court notes that, prior to an Answer being filed, Plaintiff filed an Amended Complaint [Docket Entry No. 3] to remove improperly pled Defendant "arbtre." *See Clerk's Note*, Docket Entry No. 3.

initial discovery.  As a result of initial disclosures, Plaintiff discovered an e-mail sent from Mr. Waller whose recipients include the proposed defendants, Robert Allison and Todd Allison (the "Allisons").  The body of the e-mail reads, "So I guess I will be making a trip to NJ/NY to 'rent' some lighting gear one of these days."  *Exhibit B to Plaintiff's Motion*, Docket Entry No. 29-3. Plaintiff contends that this e-mail evidences the Allisons' involvement in the alleged conspiracy and Plaintiff seeks to add Robert Allison and Todd Allison as defendants by way of this Motion. Plaintiff does not submit a brief in support of its Motion; however, Plaintiff's Counsel has submitted a Certification in which he states that the statute of limitations applicable to this action has not yet passed.  Additionally, Plaintiff's Counsel notes that the parties have not engaged in discovery beyond initial disclosures and Plaintiff's Counsel further asserts that there will be no prejudice to any party by allowing the filing of the Proposed Second Amended Complaint.

Defendants Progressive and Apex (collectively, "Progressive") have filed an Opposition [Docket Entry No. 32] in which they contend that Plaintiff has not alleged facts sufficient to establish that the Allisons authorized the actions taken by the other Defendants or that the Allisons participated in the alleged misconduct.  Simply stated, Progressive asserts that the e-mail in question is not enough to implicate the Allisons.

Progressive's brief in opposition assumes that Plaintiff seeks to add Robert and Todd Allison based on an agency theory; namely, that the other Defendants were acting as the Allisons' agents in renting and refusing to return the Equipment.  *Defendants' Brief in Opposition*, Docket Entry No. 32 at *3.  Progressive contends that Plaintiff's proposed Amended Complaint fails to allege the facts necessary to establish a claim that the other Defendants were acting as the Allisons' agents in committing fraud.  Progressive cites *Mercer v. Weyerhaeuser Company*, 324 N.J. Super.

290 (App. Div. 1999) in support of its contention that Plaintiff has not pled conduct sufficient to bind a purported principal. Thus, Progressive argues that Plaintiff's Motion should be denied as futile because the Proposed Second Amended Complaint would be subject to dismissal under a Rule 12(b)(6) analysis for failure to properly establish a claim of agency. Likewise, Progressive argues that Plaintiff's Motion should be denied because the Proposed Second Amended Complaint runs afoul of Rule 9(b) for failure to contain specific facts alleging fraud or mistake and Progressive cites to *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) in support of this proposition.

Defendants StagePro, Mr. Waller and Mr. Herman have not submitted briefs in opposition; nor have they joined in Progressive's Opposition.

Plaintiff has filed a Reply [Docket Entry No. 33]. Plaintiff specifically responds to "the Allisons' opposition." *See Plaintiff's Reply*, Docket Entry No. 33 at *1. As stated above, the only opposition to Plaintiff's Motion was filed by Progressive. Additionally, the Allisons are not yet named parties to this matter and no proof of service upon the Allisons was provided with Plaintiff's Motion. As such, the Court concludes that Plaintiff's Reply is, in actuality, a response to Progressive's Opposition [Docket Entry No. 32]. Regardless, the Court will summarize Plaintiff's Reply below.

In its Reply, Plaintiff points out that the e-mail in question was sent prior to the date that Mr. Herman contracted with Plaintiff for the Equipment. Plaintiff contends that the e-mail lays out "the nefarious scheme by which the [E]quipment was stolen." *Plaintiff's Reply*, Docket Entry No. 33 at *1. Plaintiff also asserts that the e-mail "demonstrates that the Allisons were involved in planning the alleged acts prior to their commission and it creates a reasonable expectation that

further discovery will reveal evidence that the Allisons authorized their subsequent commission." *Id.*

In response to Progressive's Opposition, Plaintiff first notes that the Opposition only addresses certain of Plaintiff's claims. Plaintiff contends that the Opposition does not mention Plaintiff's claims which do not rely on an agency relationship; including the claims for conversion, negligence, conspiracy and Consumer Fraud Act violations. As such, Plaintiff argues that its Motion to Amend has gone unopposed with respect to those claims.

Additionally, Plaintiff asserts that it has satisfied the requirements of FED. R. CIV. P. 8(a)(2) and that it has adequately pled an agency relationship between the Allisons and the other Defendants in compliance with the standard set forth in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). Specifically, Plaintiff references the section in its Proposed Second Amended Complaint which is entitled "Agency Allegations." *Proposed Second Amended Complaint*, Docket Entry No. 29-2 at *4. This section, Plaintiff states, alleges that each of the other Defendants acted as the Allisons' agents and that each was acting within the scope of their agency in carrying out the alleged acts. The Court notes that this section does not specifically reference the Allisons; but rather alleges that the Defendants "were acting with the permission and consent of the co-defendant." *Id.*

Plaintiff also states that the Proposed Second Amended Complaint sets forth the complex relationship between the parties, including the overlap in ownership of the entities. Plaintiff argues that the allegations of the Complaint, alone, are sufficient to support claim based on a theory of agency. Nevertheless, Plaintiff asserts that it has gone beyond what is required of it at the pleading stage and has provided evidentiary support for its allegations in the form of the

e-mail, which Plaintiff claims demonstrates that the Allisons were involved in the planning and commission of the alleged acts.

Ultimately, Plaintiff asserts that it has sufficiently established facts alleging wrongdoing on the behalf of the Allisons as well as an agency relationship between the parties. Plaintiff does not think it should be precluded from bringing claims against the Allisons simply because their grant of authority was not memorialized in an e-mail. Plaintiff wishes to have a fair opportunity to explore whether the Allisons provided authorization to commit the alleged acts in some other manner.

## II. Analysis

### A. Standard for Leave to Amend

Pursuant to FED. R. CIV. P. 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To evaluate futility the District

Court uses "the same standard of legal sufficiency" as applied for a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Accordingly, if a claim is vulnerable to dismissal under *Rule 12(b)(6)*, but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

A motion to amend is properly denied where the proposed amendment is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6) (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Although a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Additionally, in assessing a motion to dismiss, although the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B. Discussion

As an initial matter, the Court finds that there has been no undue delay, bad faith or dilatory motive on the part of the movant; neither has there been repeated failure to cure deficiencies by amendments previously allowed. Indeed, Defendants do not argue as much. Additionally, the Court finds that this case is in its infancy and notes that the parties had not progressed beyond initial discovery at the time this Motion was filed. Moreover, the Proposed Second Amended Complaint seeks only to add defendants and is not a dramatic departure in substance from the previous version. For these reasons, the Court determines that there would be no undue prejudice to the parties involved. Given the absence of absence of undue delay, bad faith and prejudice, the Court need only address the futility of Plaintiff's Motion.

### 1. Futility

Here, Plaintiff alleges that Robert Allison is owner and officer of Progressive and an owner and officer of Apex. Plaintiff also alleges that Todd Allison is an owner and officer of Progressive. Plaintiff further alleges that proposed defendants Robert and Todd Allison were recipients of an e-mail which Plaintiff claims establishes that the Defendants conspired to commit fraud and conversion. Defendants do not dispute these allegations except to argue that the content of the e-mail itself is cryptic. Rather, Defendant Progressive focuses on the argument that Plaintiff has not sufficiently established an agency relationship to implicate the Allisons. The Court finds that Progressive's argument, while slightly misplaced, has merit. For the reasons that follow, the Court determines that Plaintiff has not pled facts sufficient to impose individual liability upon the Allisons for all the asserted claims.

New Jersey law is clear that a corporation is a separate entity from its corporate principals. *See, e.g., State Dep't of Environ. Prot. v. Ventron Corp.,* 468 A.2d 150, 164 (N.J.1983). In fact, the essence of incorporation is to insulate corporate principals from personal liability for corporate acts. *See id.* However, where the corporation is being used by its principals to perpetrate fraud, injustice, or the like, a court may pierce the corporate veil to impose liability on corporate principals. *Id.* "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 287 N.J.Super. 232, 240, 670 A.2d 1092 (App.Div.1996).

In New Jersey, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the

individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *The Mall at IV Group Properties, LLC v. Roberts,* No. 02–4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005)(*quoting 1* William Meade Fletcher *et al., Fletcher Cyclopedia of the Law of Private Corporations*, § 41.30 (perm. ed., rev. vol. 1999)).  However, even in instances where one individual shareholder or director dominates the corporate entity, "liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law." *State Capital Title & Abstract Co. v. Pappas Business Services, LLC,* 646 F.Supp.2d 668 (D.N.J. 2009) (*quoting Ventron,* 94 N.J. at 500, 468 A.2d 150).

In this case, Plaintiff has alleged only that the Allisons are owners or officers of the Defendant corporations, that the Allisons were recipients of an e-mail which Plaintiff contends sets forth a plan to commit fraud and conversion, and that Todd Allison, of Progressive, sent an invoice to Plaintiff indicating that repairs to the Stage were not authorized under the Warranty. Plaintiff also points out that there is a section of the Proposed Second Amended Complaint titled "Agency Allegations," which Plaintiff contends adequately establishes an agency relationship between the parties and which the Court has carefully reviewed.  This section, however, consists of one sentence and simply alleges that each of the named defendants was an agent or principal of the others; that each was acting within the scope and authority as an agent or principal; and that each was acting with the permission and consent of the other.  This bald assertion, without more, is insufficient to pierce the corporate veil and attach individual liability to the owners of the Defendant corporations whose sole involvement in this matter, as asserted by Plaintiff, is their

status as owner or officer of the Defendant corporations and their receipt of an e-mail whose meaning is still subject to interpretation. While bearing in mind that the parties are at the pleading stage of this case, the Court cannot ignore the fact that there is nothing before It which justifies that the extraordinary remedy of piercing the corporate veil to allow claims against the owners of the Defendant corporations individually. *Scholes Electric & Communications, Inc. v. Fraser*, 2006 WL 1644920, 4 (D.N.J. 2006).

It is still possible, however, to attach individual liability to a principal without first piercing the corporate veil. "It is not necessary that the 'corporate veil' be pierced in order to impose personal liability as long as it is shown that the corporate officer knowingly participated in the wrongdoing. However, it is necessary to pierce the corporate veil in order to impose personal liability upon a non-participating corporate officer." 3A William F. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations,* § 1137 (perm. ed. rev. 1994). Further, it is well settled law in New Jersey and in this Circuit that a corporate officer can be held individually liable for his or her intentional torts without the need to pierce the corporate veil. *See Kare Distribution, Inc. v. Jam Labels and Cards LLC,* 2009 WL 3297555, 7 (D.N.J.,2009); *Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC,* 2006 WL 3675384, at *3–6 (D.N.J. Dec.12, 2006) (denying defendants' motion to strike individual owner as defendant and holding that owner could be held personally liable for tortious conduct); *U.S. ex rel. Haskins v. Omega Institute, Inc.,* 11 F.Supp.2d 555 (D.N.J.1998) (allowing fraud claim against corporate officers). Thus, a plaintiff can impose personal liability upon an owner of a corporation for intentional torts if proper factual basis is provided in the complaint.

However, as discussed above, the only facts alleged relating to the proposed defendants in

this case is that the Allisons are the owners or officers of the Defendant corporations, that they were recipients of a controversial e-mail and that Todd Allison, of Progressive, sent an invoice to Plaintiff indicating that repairs to the Stage were not authorized under the Warranty.  None of these allegations support a claim for an intentional tort against them in their individual capacity.

As set forth above, the Allisons' statuses as owners or officers of the Defendant corporations is insufficient to impose personal liability against them without first piercing the corporate veil, which, in this case, Plaintiff has not.  Additionally, the Allisons' receipt of the e-mail is insufficient to establish their affirmative involvement in any of the named torts.  At this point, the e-mail itself is still subject to interpretation and the Allisons' receipt of same is not enough to establish any express or implied agreement to carry out an illegal act.  Finally, the April 21, 2011 letter from Todd Allison to Plaintiff was, as Plaintiff admits, sent on behalf of Progressive and establishes no wrong-doing.

The Court wishes to clarify that Plaintiff has provided detailed factual support for each of its claims against the existing defendants sufficient to survive a Rule 12(b)(6) motion to dismiss; however, the vast majority of the facts alleged, aside from the few mentioned above, do not specifically reference the Allisons.  Rather, the claims refer to the named defendants collectively as "Defendants" or "Defrauding Defendants."  The Allisons cannot simply be lumped into the category of existing defendants without a proper basis.  In short, Plaintiff cannot impose personal liability on the Allisons for intentional torts without first alleging that the Allisons individually participated in some wrong-doing.  Accordingly, the Court will not allow the intentional tort claims to proceed against the proposed defendants in their individual capacity.

### III.     Conclusion

For the reasons set forth above, Plaintiff's Motion to Amend is DENIED without prejudice. Plaintiff is free to file a renewed motion to add the proposed defendants if, as discovery progresses, more information comes to light.   An appropriate Order follows.


Dated: August 23, 2013

                                        s/   Tonianne J. Bongiovanni
                                        **HONORABLE TONIANNE J. BONGIOVANNI**
                                        **UNITED STATES MAGISTRATE JUDGE**